# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION AT CINCINNATI

JOSH AARON STEELMAN,

                Petitioner,            :     Case No. 1:19-cv-16

     - vs -                                District Judge Matthew W. McFarland
                                          Magistrate Judge Michael R. Merz

WARDEN,
 London Correctional Institution,

                                    :
                Respondent.

# REPORT AND RECOMMENDATIONS

This habeas corpus case, brought *pro se* by Petitioner Joshua Steelman under 28 U.S.C. § 2254, is before the Court for decision on the merits. The relevant filings are the Petition (ECF No. 5), the State Court Record (ECF No. 7), the Return of Writ (ECF No. 8), and Petitioner's Reply (ECF No. 10).

**Litigation History**

On October 18, 2016, a Hamilton County Grand Jury indicted Steelman on one count of Burglary in violation of Ohio Revised Code § 2911.12(A)(1))(Count 1) and one count of Receiving Stolen Property in violation of Ohio Revised Code § 2913.51(A)) (Count 2). (Indictment, State Court Record, ECF No. 7, Exhibit 1). A petit jury found Steelman guilty on all counts and he was sentenced to eight years imprisonment. (Judgment, State Court Record, ECF No. 7, Ex. 6). The First District

Court of Appeals affirmed the conviction and sentence.  *State v. Steelman*, 2018-Ohio-1732 (Ohio App. 1st Dist. May 4, 2018), appellate jurisdiction declined, 153 Ohio St. 3d 1468 (2018).

The First District's opinion provides the factual context for its decision:

**Facts**

**Police find Steelman with Stolen Items**

[*P2]  Within hours of the burglary [of the home of Flora and Davey Harris], Deputy Gator Rollins found Steelman unconscious on the side of the road behind a pickup truck driven by Justin Callaway. Steelman had been riding with Callaway when he overdosed, and Callaway had pulled Steelman out of his truck. According to Deputy Rollins, Callaway was "a nervous wreck," and "excited," and said that Steelman had overdosed on heroin. Emergency medical personnel arrived and revived Steelman. Deputy Rollins testified that subsequently, "in Callaway's excited state of mind," Callaway had said, "There's a lot of stuff in * * * [Callaway's pickup truck] that Steelman stole from Ohio."

[*P3]  Deputy Rollins searched Callaway's truck. He found jewelry, coins, and a bag containing almost $10,000 with Davey Hayes's name and phone number written in it. At trial, Flora Hayes testified that most of these items had been in her basement safe.

**The Investigation: Jailhouse Calls, DNA Evidence, and the Wittich Interview**

[*P4]  Steelman made several jailhouse phone calls that were played for the jury. One of the calls was to the Hayeses' son, who Steelman had known for years. Steelman said to him, "Tell your dad I'm so fucking sorry." Steelman also said that documents taken from the Hayeses' safe were in a burn barrel close to the Hayeses' house. Investigating detective Albert Wittich found the documents where Steelman said they would be. In another call, Steelman detailed the dollar bill denominations of the stolen money. In others, he stated that Callaway wasn't involved, that if the Hayeses pressed charges against him, he would "be fucked," and that the people Steelman believed were involved in the burglary would "fucking pay." Steelman named several of the people he thought had been involved in his alleged set-up.

[*P5] Items police collected from the Hayeses' basement included a Pepsi can. It was noticeably out of place, as neither of the Hayeses drank Pepsi. Later testing found Steelman's DNA on the can.

[*P6] Wittich interviewed Steelman after some of the jailhouse calls, but before Steelman was arrested for burglary and receiving stolen property. The interview began with Steelman stating that he wanted a lawyer, and that he did not talk to police officers. The detective answered that the interview was an opportunity for Steelman "to explain himself," and say who else had been involved. Steelman repeatedly said he did not want to talk, and that he wished to have counsel. Interspersed with these statements, however, Steelman stated that he had been high the night the burglary took place, remembered only bits of the evening, and believed he had been framed. He also told Wittich that Callaway had not been involved, and that around $10,000 had been stolen from the Hayeses. Steelman refused to answer Wittich's question of who, in particular, had been involved in Steelman's alleged setup and the burglary.

## The State Plays the Interview in its Case-in-Chief

[*P7] Steelman waived his right to move to suppress the Wittich interview but nevertheless objected on the basis of Miranda to the state playing it in its case-in-chief. The objection was overruled.

[*P8] After the interview was played, defense counsel asked Wittich on cross-examination, "When you were talking to Mr. Steelman, you were trying to get him to * * * implicate * * * third parties?" Wittich answered, "If that was the truth, yes." On redirect, the state asked the detective, "You specifically asked the defendant, hey, tell me who else was involved, and he didn't tell you anybody, right?" Wittich answered, "Correct."

## Steelman Takes the Stand

[*P9] Steelman testified that he had been under the influence of multiple drugs the night the Hayeses, who were his neighbors and family friends, were burglarized. He said he was at a casino until 3 a.m., and then "continued to party" at home until he saw police arrive at the Hayeses' home.

[*P10] Steelman said he walked next door to investigate and learned that the Hayeses had been burglarized. Steelman explained

3

that Callaway had told him how much money had been stolen, and its denominations. Steelman also testified that he knew where the stolen documents were because he had inspected the perimeter of the Hayeses' property the morning of the burglary and had seen them before leaving with Callaway. He explained that he didn't immediately come forward with this information because he had a criminal record, and was afraid doing so would falsely implicate himself in the burglary.

*Steelman*, 2018-Ohio-1732.

Steelman then filed his Petition in this Court, pleading the following grounds for relief:

**Ground One:** "The trial court erred in premitting [sic] the use of Petitioner's pre-arrest silence as substantive evidence against him during the State's case-in-chief."

**Factual Support:** The state presented testimony of the Petition [sic], who had not yet been arrested or Mirandized for the Burglary, who remained silent and asserted his right to counsel in the face of questioning by arresting officer, Deputy Wittich. The use of Petitioner's pre-arrest silence in the state's case-in-chief as substantive evidence of guilty [sic] subverts the polices [sic] behind the Fifth Amendment. *State v. Leach*, 102 Ohio St.3d 135, 2004-Ohio-2147, at ¶30 quoting *Murphy v. Waterfront Comm. Of New York Harbor,* 378 U.S. 52, 55 (1964). Allowing the use of pre-arrest silence as evidence of guilty [sic], by refusing to answer Deputy Wittich's questions without an attorney, undermines the very protections the Fifth Amendment was designed to provide.

**Ground Two**: "The prosecutor elicit [sic] hearsay testimony from one of its witnesses."

**Factual Support**: Prosecutor's witness, Deputy Rollins, testified to what Petitioner's co-defendant [Callaway] told him, who, did not testify at Petitioner [sic] trial, which denied the Petitioner the opportunity to challenge that state [sic] made by Petitioner's co-defendant.

Out of court statement by a non-testifying co-defendant, that shift or spread blame to a criminal defendant, fall outside the realm of those hearsay exceptions that are so trustworthy that adversarial testing can be expected to add little to the statement's reliability, *Lilly v. Virginia,* 527 U.S. 116, 117 (1999) quoting *White v. Illinois*, 502 U.S. 346, 357 (1992).

4

**Ground Three**: "The prosecutor committed multiple instance[s] of misconduct throughout Petitioner's trial."

**Factual Support**: Prosecutor misconduct deprive[d] Petitoiner [sic] of his right to due process and a fair trial. In particular, the prosecutor referred to Petitioner as "some yay-hoo," "some two-bit drug addict," a "vindictive, violent individual," a "junkie," a "two bit heroin addict," and a "two-bit junkie." (Tr. 713, 720, 757, 762). Prosecutor even expressed his personal belief and opinion to the credibility of the Petitioner and the defense. Not only did the prosecutor attempt to tip the scales of justice by repeatedly interjecting his personal opinion into the record, he intentionally misstated the law regarding the presumption of innocence during rebuttal, "When you go to the jury room, the presumption of innocence is no longer with him." (Tr. 752).

(Petition, ECF No. 5, PageID 42-45.)

# Analysis

**Ground One:  Use of Pre-Arrest Silence as Substantive Evidence of Guilt**

In his First Ground for Relief, Steelman claims the use of his recorded pre-arrest silence in response to police questioning as substantive evidence of his guilt violated his privilege against self-incrimination under the Fifth Amendment.  He presented this claim as his First Assignment of Error on direct appeal and the First District decided it as follows:

**Prearrest Silence**

 [*P14]  In his first assignment of error, Steelman contends that the state used his prearrest silence in the Wittich interview as substantive evidence of his guilt, in violation of the Fifth Amendment's protection against self-incrimination. Steelman is correct.

 [*P15]  We apply a plain error standard of review. Steelman argues that a plain error analysis is not appropriate because counsel objected to the interview. However, counsel objected on the basis of

5

*Miranda* and not on self-incrimination grounds. The *Miranda* objection did not alert the trial court or opposing counsel to Steelman's Fifth Amendment argument at a time when the potential error could have been avoided or corrected, which is the very purpose of an objection. See *State v. Davis*, 1 Ohio St.2d 28, 203 N.E.2d 357 (1964), paragraph two of the syllabus;  *State v. Childs*, 14 Ohio St.2d 56, 236 N.E.2d 545 (1968), paragraph three of the syllabus. He has therefore forfeited all but plain error on appeal. Crim.R. 52(B); *State v. Rogers,* 143 Ohio St.3d 385, 2015-Ohio-2459, 38 N.E.3d 860, ¶ 21-22. "Plain error" is (1) an error, (2) that is obvious, and (3) that affected the outcome of the trial. *State v. Barnes*, 94 Ohio St.3d 21, 27, 2002- Ohio 68, 759 N.E.2d 1240 (2002).

 [*P16]  Here there was error that was obvious. The Fifth Amendment to the United States Constitution states that no person "shall be compelled in any criminal case to be a witness against himself." Unless used for impeachment, evidence that a defendant asked for an attorney or otherwise indicated an unwillingness to talk to police violates the Fifth Amendment's protection against self-incrimination. *State v. Leach*, 102 Ohio St.3d 135, 2004-Ohio-2147, 807 N.E.2d 335, ¶ 31. Here, the state presented evidence in its case-in-chief that Steelman asked for an attorney multiple times, refused to answer Wittich's question concerning who else was involved, and told Wittich he "didn't talk to cops." There was no probative value to the evidence of Steelman's silence other than to allow the jury to infer guilt from it. See *id*. at ¶ 25. It therefore was admitted in violation of the Fifth Amendment. See id.; *Combs v. Coyle*, 205 F.3d 269 (6th Cir.2000) (use of defendant's statement to police, "talk to my lawyer," in the state's case-in-chief violated the Fifth Amendment's shield against self-incrimination); *State v. Pence*, 12th Dist. Warren No. CA2012-05-045, 2013-Ohio-1388 (detective's testimony that defendant's attorney, and not defendant, returned a phone call placed to the defendant, and testimony that the defendant never gave police a statement violated the Fifth Amendment's protection against self incrimination); *State v. Whitaker*, 4th Dist. Scioto No. 07CA3168, 2008-Ohio-4149 (officer's testimony that defendant told the officer that he "didn't want to incriminate himself" impermissibly used the defendant's right to remain silent against him); *State v. Estepp*, 2d Dist. Miami No. 2006 CA 22, 2007-Ohio-2596 (detective's testimony that defendant failed to return phone calls and cancelled police interviews violated defendant's right not to incriminate himself).

 [*P17]  The state contends that because Steelman took the stand his silence was properly admitted to impeach him. Once a defendant

chooses to testify, the state may use a defendant's prior silence to impeach his credibility. *Jenkins v. Anderson*, 447 U.S. 231, 238, 100 S.Ct. 2124, 65 L.Ed.2d 86, (1980). A defendant's silence, however, "cannot possibly be used to impeach his credibility when he has yet to testify." *State v. Shea*, 1st Dist. Hamilton No. C-840806, 1985 Ohio App. LEXIS 8402, 1985 WL 8938, *3 (July 17, 1985). Here, Steelman had not yet testified when the state played the interview. This error was not cured when Steelman took the stand. It is impossible to say if Steelman's choice to testify was based on pressure to explain his silence, and we therefore find that the state's after-the-fact justification is feckless. See *Combs* at 285. Further, the state used Steelman's silence as evidence of his guilt, not as impeachment evidence, by asking Wittich, "You specifically asked the defendant, hey, tell me who else was involved, and he didn't tell you anybody, right?" And did so again during closing argument when the prosecutor stated, "If someone else had stolen that sack of money he [Steelman] would have told Det. Wittich 'I don't know how much was in there, Larry gave it to me.'" The prosecutor also used Steelman's silence as evidence of guilt during rebuttal when he argued that Steelman had "had a chance" to explain himself to Wittich and to tell him who else had been involved, but did not.

[*P18]  Next, the state argues that Steelman did not remain silent, despite his statements that he wanted an attorney and would not answer questions, and therefore the Wittich interview was properly played for the jury. Putting aside *Miranda*, parts of the interview were clearly admissible—i.e. Steelman's admission that he knew $10,000 had been stolen, his statement that he had been high on the night in question, and his contention that Callaway wasn't involved—but other parts of the interview clearly were not, and those portions should have been redacted. See, e.g., *Whitaker* at ¶ 34 (where a firearm and Hydrocodone pills were found in defendant's car, officer properly testified that defendant admitted that the pills were his, but officer should not have been permitted to testify that, when asked about the firearm, the defendant stated he didn't want to incriminate himself).

[*P19]  We hold that the failure to redact the offending statements was error.

*Steelman*, 2018-Ohio-1732.

Having found admission of at least parts of the tape to have been in error, the First District then decided it was not plain error because the other evidence of Steelman's guilt was overwhelming.

7

**Plain Error Determination**

[*P39] We review the Fifth Amendment violation and the improper closing argument comments, except for the prosecutor's misstatement of the law—which we have already determined was not prejudicial—to determine whether these errors affected the outcome of Steelman's trial, resulting in plain error. See *Barnes*, 94 Ohio St.3d at 27, 759 N.E.2d 1240.

[*P40] Steelman argues that the state's case here was weak, and contends that the jury's note stating that they could not come to a verdict on the burglary charge is proof of its weakness. We disagree. Police discovered Steelman with the stolen goods within hours of the burglary, Steelman knew where the Hayeses' missing documents could be found, he knew that $10,000 had been stolen, he discussed the denominations of the stolen dollar bills, he told the Hayeses' son to tell Davey Hayes that Steelman was "sorry," and Steelman's DNA was found on a Pepsi can in the Hayeses' basement close to the safe. Because the evidence of Steelman's guilt is overwhelming absent the evidence of his silence and the improper closing statements, we hold that there was no plain error.

*Steelman*, 2018-Ohio-1732.

When a state court decides on the merits a federal constitutional claim later presented to a federal habeas court, the federal court must defer to the state court decision unless that decision is contrary to or an objectively unreasonable application of clearly established precedent of the United States Supreme Court. 28 U.S.C. § 2254(d)(1); *Harrington v. Richter*, 562 U.S. 86, 131 S. Ct. 770, 785 (2011); *Brown v. Payton,* 544 U.S. 133, 140 (2005); *Bell v. Cone*, 535 U.S. 685, 693-94 (2002); *Williams (Terry) v. Taylor,* 529 U.S. 362, 379 (2000). Deference is also due under 28 U.S.C. § 2254(d)(2) unless the state court decision was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.

In his Reply, Steelman does not grapple with the First District's plain error analysis. That is to say, he offers no rebuttal to that court's conclusion that, absent the offending evidence, the

evidence against him was still overwhelming.  The Magistrate Judge agrees with the First District that the non-offending evidence was overwhelming.  Steelman lived next door to the burglarized residence and the stolen property was recovered from him within hours of the burglary.  He knew the amount of money which had been stolen, including denominations, and where the victims' documents were located.  He made several damaging admissions in recorded telephone calls from jail and his DNA on the Pepsi can found at the residence places him at the scene of the crime.  In sum, Steelman has not shown that the First District's evaluation of the evidence was an unreasonable determination of the facts on the basis of the evidence before it.

In addition to defending this First Ground for Relief on the merits, Respondent asserts it is procedurally defaulted because Steelman failed to appeal this Ground for Relief to the Supreme Court of Ohio.  In his Reply, Steelman admits that this is so, but seeks to excuse this procedural default by claiming he is actually innocent.

His theory is this:  his DNA was recorded in the national CODIS database prior to the burglary, but that evidence was never presented at trial.  Instead, just prior to trial, after learning Justin Callaway would not testify, the investigating detective obtained a mouth swab from Steelman, retrieved the Pepsi can from the evidence room, and "the pepsi can investigators stored away for 8-months was now found to have petitioner's "raw" DNA on it. This placed petitioner at the crime scene."  (Reply, ECF No. 10, PageID 870).  Steelman's theory is that Detective Wittich "planted" the DNA from his mouth swab on the Pepsi can and thereby seriously falsified evidence.

> The question that cannot be explained away is "why would Deputy Wittich extract "raw" DNA samples out of petitioner's mouth when petitioner's DNA profile was available in the national CODIS ?
>
> Even those less observant would entertain the thought that Deputy Wittich extreme behavior was due to his desperate attempt to save

the State ' s case by putting petitioner's "raw" DNA on the pepsi can
to place petitioner at the scene of the crime. This was to substitute
the testimony of the non-testifying Justin Callaway.

*Id.* at PageID 871.

Proof of actual innocence can act as a "gateway" to excuse procedural default in habeas

cases. In *Souter v. Jones*, 395 F.3d 577 (6th Cir. 2005), the Sixth Circuit held:

> [I]f a habeas petitioner "presents evidence of innocence so strong
> that a court cannot have confidence in the outcome of the trial unless
> the court is also satisfied that the trial was free of nonharmless
> constitutional error, the petitioner should be allowed to pass through
> the gateway and argue the merits of his underlying claims." *Schlup
> v. Delo,* 513 U.S. 298, 316 (1995)." Thus, the threshold inquiry is
> whether "new facts raise[] sufficient doubt about [the petitioner's]
> guilt to undermine confidence in the result of the trial." *Id.* at 317.
> To establish actual innocence, "a petitioner must show that it is more
> likely than not that no reasonable juror would have found petitioner
> guilty beyond a reasonable doubt." *Id.* at 327. The Court has noted
> that "actual innocence means factual innocence, not mere legal
> insufficiency." *Bousley v. United States*, 523 U.S. 614, 623, 140 L.
> Ed. 2d 828, 118 S. Ct. 1604 (1998). "To be credible, such a claim
> requires petitioner to support his allegations of constitutional error
> with new reliable evidence -- whether it be exculpatory scientific
> evidence, trustworthy eyewitness accounts, or critical physical
> evidence -- that was not presented at trial." *Schlup*, 513 U.S. at 324.
> The Court counseled however, that the actual innocence exception
> should "remain rare" and "only be applied in the 'extraordinary
> case.'" *Id.* at 321.

*Souter v. Jones,* 395 F.3d 577, 590 (6th Cir. 2005).

In this case Steelman has presented no new evidence at all. He asserts, but has offered no

proof whatsoever, that his DNA profile was in the national CODIS database prior to the time of

trial. Assuming his profile is in CODIS, he must have known this at the time of trial and

presumably his lawyer knew it as well. Why, then, not put the "question that cannot be explained

away" to Deputy Wittich on cross-examination? If there were good impeaching questions about

the chain of custody of the Pepsi can and the mouth swab, those questions would also have been

available to counsel at the time of trial, but were apparently not asked. Impeaching answers then would have been available to the jury to test the credibility of the State's case.

Steelman argues that although this evidence existed at the time of trial, it was not presented to the jury and thus can "count" as new evidence because it is newly-presented even though not newly-discovered (Reply, ECF No. 10, PageID 870). The authority he relies on, *Allen v. Yukins*, 366 F.3d 396 (6th Cir. 2004), does not discuss this distinction. In *Dufresne v. Palmer*, 876 F.3d 248 (6th Cir. 2017), the Sixth Circuit held that evidence (police reports) that could have been discovered by the exercise of due diligence before trial does not qualify as new evidence. Previously, in *Cleveland v. Bradshaw*, 693 F.3d 626 (6th Cir. 2012), the Sixth Circuit had suggested without deciding that it was sufficient if the evidence was newly-presented as opposed to newly-discovered. District Judge Rice of this Court has followed the newly-presented suggestion in Cleveland without discussing *Dufresne*. *Clark v. Noble*, 2019 U.S. Dist. LEXIS 49689, at *49-50 (S.D. Ohio 2019). The *Dufresne* holding was in the alternative because the Sixth Circuit held the police reports did not actually establish that Dufresne was innocent. 876 F.3d at 256. Based on that distinction, the Court remains free to consider newly-presented evidence, as opposed to newly-discovered evidence, on the actual innocence question. Because Steelman has presented no new evidence at all, but only argument, the Magistrate Judge recommends the Court not decide the newly-present versus newly-discovered question in this case.

The asserted new evidence here contrasts markedly with the physical evidence found sufficient to satisfy the actual innocence gateway in *House v. Bell,* 547 U.S. 518 (2006). In that rape and murder case, strong physical evidence against House was that the victim's blood was found on his trousers. The new evidence presented in habeas was that vials of the victim's blood had been shipped to the laboratory with the pants, and one of them had broken in route, providing

a completely innocent explanation of her blood on his pants.  Here the Petitioner has presented no new evidence at all.  He has not shown, by documentary evidence or otherwise, that he was actually in the CODIS database prior to trial.  But even if he was, the entire balance of his actual innocence case depends on speculation that Wittich falsified evidence.  That proof is simply insufficient to meet the standard in *Schlup v. Delo, supra.*

Petitioner's First Ground for Relief is without merit and he has also not excused his procedural default in failing to present it to the Supreme Court of Ohio.

**Ground Two:  Admission of Hearsay Statements of Justin Callway**

In his Second Ground for Relief, Steelman contends that the admission of hearsay statements of Justin Callaway about the items in Callaway's truck having been stolen by Steelman deprived him of his right of confrontation with the witnesses against him, in violation of the Sixth Amendment.  On direct appeal the First District held Callaway's statement did not properly come within the excited utterance exception to the hearsay rule and should have been excluded on that basis. *Steelman*, 2018-Ohio-1732, ¶¶ 20-22. It then concluded Steelman's Confrontation Clause claim was moot. *Id.* at ¶ 23.  However, based again on the overwhelming evidence of guilt, it found admission of Callaway's statements harmless error.  *Id.* at ¶¶ 41-43.

The question for this habeas court is whether the First District's conclusion about the weight of the evidence was unreasonable in light of the evidence presented.  28 U.S.C. § 2254(d)(2).  The Magistrate Judge agrees with the First District that there was overwhelming evidence of guilt and therefore admission of Callaway's hearsay statements was harmless error.

In the alternative, Respondent's defense of procedural default of this claim by failure to present it to the Supreme Court of Ohio is also well taken.  Steelman admits he did not present the issue and

his claim of excusing actual innocence is the same on Ground Two as on Ground One and equally unavailing.

**Ground Three:  Prosecutorial Misconduct**

In his Third Ground for Relief, Steelman claims his trial was rendered unfair by repeated acts of prosecutorial misconduct.  On direct appeal, Steelman raised this claim as his Third Assignment of Error which the First District decided as follows:

**Prosecutorial Misconduct**

[*P24]  In his third assignment of error, Steelman argues that the assistant prosecuting attorney made improper remarks during closing argument that resulted in an unfair trial.

[*P25]  The test for prosecutorial misconduct is whether remarks were improper and, if so, whether they prejudicially affected the substantial rights of the accused. *State v. Lott*, 51 Ohio St.3d 160, 165, 555 N.E.2d 293 (1990). Prosecutors are given wide latitude during closing to argue what the evidence has shown, and to draw reasonable inferences from it. *id*. at 166. "Wide latitude" does not include "insinuations and assertions calculated to mislead" or "personal beliefs or opinions regarding the guilt of the accused * * *." *id*. Further, the state "may not allude to matters not supported by admissible evidence." id.

**Improper Comments on Steelman's Silence**

[*P26]  Here, the prosecutor stated, "If someone else had stolen that sack of money he would have told Det. Wittich 'I don't know how much was in there, Larry gave it to me.'" The prosecutor also argued during rebuttal that Steelman had "had a chance" to explain himself to Wittich and to tell him who else had been involved, but did not. Defense counsel did not object, so we apply a plain error standard of review. Neither of these remarks was supported by admissible evidence. We therefore hold that there was obvious error. See *id*; *Rogers*, 143 Ohio St.3d 385, 2015-Ohio-2459, 38 N.E.3d 860, at ¶ 21-22; *State v. Wogenstahl*, 75 Ohio St.3d 344, 357, 1996- Ohio 219, 662 N.E.2d 311 (1996).

13

**"Two-Bit Junkie"**

[\*P27]  Steelman next takes issue with the assistant prosecutor referring to him as a "two bit junkie," "two-bit addict," "two-bit heroin addict," and "junkie," as well as "some ya-hoo," and a "vindictive, violent individual."   There was no objection to these comments.

[\*P28]  Both parties may be "colorful or creative" during closing argument, provided comments are supported by the evidence. *State v. Brown*, 38 Ohio St.3d 305, 317, 528 N.E.2d 523 (1988). Steelman admitted that he had been high the night of the burglary, and it is undisputed that he had overdosed just hours after the burglary occurred. In regard to the "violent vindictive" statement, in one of the jailhouse phone calls Steelman threatened several times that others he believed had been involved in the burglary would "fucking pay." Thus, the prosecutor's comments, while colorful, were acceptable inferences drawn from facts in evidence. See *State v. Tibbetts*, 92 Ohio St.3d 146, 168, 2001- Ohio 132, 749 N.E.2d 226 (2001) (referring to defendant as a "trained killer" was fair comment on the evidence); *State v. Nields*, 93 Ohio St.3d 6, 37, 2001- Ohio 1291, 752 N.E.2d 859 (2001) (argument that the defendant was a "mean-spirited derelict" and an "unemployed killer" were not improper where supported by the record).

**Comments on Credibility**

[\*P29]  Steelman next asserts that the prosecutor expressed his personal belief as to Steelman's credibility and the defense's overall theory of the case.

[\*P30]  A prosecutor's statement on witness credibility is improper if it implies knowledge of facts outside the record or places the prosecutor's personal credibility at issue. *State v. Keene,* 81 Ohio St.3d 646, 666, 1998-Ohio-342, 693 N.E.2d 246 (1998). However, a prosecutor may state his or her opinion if supported by the evidence. *State v. Jackson,* 107 Ohio St.3d 300, 2006-Ohio-1, 839 N.E.2d 362, ¶ 154. For example, a "prosecutor may comment upon the circumstances of witnesses in their testimony" and may argue "that these circumstances make the witnesses more or less believable and deserving of more or less weight." *State v. Clay*, 181 Ohio App.3d 563, 2009-Ohio-1235, 910 N.E.2d 14, ¶ 47 (8th Dist.). A prosecutor may not state that the defendant is a liar, but "may

14

suggest that the evidence demonstrates the defendant is lying, scheming, or has ulterior motives." *State v. Irwin,* 7th Dist. Columbiana No. 11-CO-6, 2012-Ohio-2704, ¶ 116, citing *State v. Kroger,* 12th Dist. Clermont No. CA99-05-050, 2000 Ohio App. LEXIS 1393, 2000 WL 342130, *2 (Apr. 3, 2000).

[*P31] Steelman argues that the prosecutor personally vouched for the credibility of witnesses and impermissibly injected his personal opinion as to what the evidence showed by saying: (1) "I love" Steelman's explanation concerning statements in the jailhouse calls and that Steelman's explanation "makes no sense to me"; (2) "the other thing I loved" was Steelman's phone call on July 22, 2016; (3) "That's the other thing I love about this case"—that even if others were involved, Steelman could still be guilty of complicity; (4) "But this I know for a fact that he left that Pepsi can there with his DNA on it. And I know for a fact that he is the one that was caught with the property in his possession a mere three or four hours after these offenses occurred"; (5) "It's hard to respond to something like that," referring to Steelman's closing argument, "I'll be honest with you. It is so ridiculous. Seriously."; (6) defense counsel's implication that a March 2017 date on the Pepsi can found in the Hayeses' basement meant that the can was made in March 2017—and therefore post-dated the burglary and was planted—was "misleading"; (7) "I love" defense counsel's argument that the Pepsi can came from the garbage and was used to set Steelman up; and (8) "another beauty" that "makes no sense whatsoever" was the theory that Callaway was trying to dump Steelman's dead body at the side of the road and frame him for the burglary.

[*P32] Defense counsel objected only to the prosecutor's argument on whether the Pepsi can was from the garbage, but did not object on the ground currently raised. We therefore review for plain error.

[*P33] Most of the prosecutor's comments that he "loved" certain aspects of the case, his "another beauty" statement, and his statement that defense counsel's theory of the evidence "made no sense whatsoever" were not tantamount to an expression of his personal belief regarding Steelman's guilt. Instead, they can be fairly characterized as the prosecutor arguing that the inferences that could be drawn from the evidence made the defense's theory less believable and undeserving of much weight. These statements were therefore not beyond the bounds of a proper closing argument. One of these comments—that the prosecutor "loved" that Steelman could be found guilty of complicity even if he was not the principle offender—carries no suggestion that the prosecutor was arguing that he personally believed Steelman was guilty.

[*P34]  The prosecutor should not have argued that he knew "for a fact" that Steelman left the Pepsi can in the Hayeses' basement, and that he knew "for a fact" that Steelman was caught with the Hayeses' property shortly after the burglary was reported. These statements placed the prosecutor's personal credibility at issue, and may have suggested to the jury that the prosecutor knew things about the case that the jury did not. They were clearly improper.

[*P35]  The prosecutor's statements on rebuttal that Steelman's closing argument was "ridiculous" and that defense counsel's Pepsi can date insinuation was "misleading" was a fair response to defense counsel's closing argument. See *State v. Pickens*, 141 Ohio St.3d 462, 2014-Ohio-5445, 25 N.E.3d 1023, ¶ 135 (prosecutor's statement on rebuttal that defense counsel's argument was "ludicrous" was not improper), citing *State v. Martin*, 6th Dist. Erie No. E-11-020, 2013-Ohio-973, ¶ 42 (prosecutor's references to defendant's story to police as "ridiculous and nonsense" borne out by the evidence). The prosecutor's comments fairly pointed out perceived weaknesses in Steelman's closing argument.

## Misstatement of the Law

[*P36]  Next, Steelman contends that the prosecutor committed misconduct by stating that, once the jury began deliberations, "the presumption of innocence is no longer with him * * * it's up to you to determine if the State has met its burden of proof." This was clearly improper. Defense counsel objected. The trial court sustained the objection and immediately instructed the jury that Steelman "is still presumed innocent unless and until you find that the defendant is guilty because the State has proved it beyond a reasonable doubt." The prosecutor subsequently admitted to the jury that he had misstated the law. The jury was properly instructed regarding the state's burden of proof before they began deliberations. We presume the jury followed the trial court's instructions. See *Pang v. Minch*, 53 Ohio St.3d 186, 559 N.E.2d 1313 (1990), paragraph four of the syllabus. We therefore hold that Steelman was not prejudiced by this misstatement.

## Facts not in Evidence

[*P37]  Finally, Steelman contends that the prosecutor argued facts not in evidence. The prosecutor stated during rebuttal, "You don't think Shawn [the Hayeses' grandson] at some point told him

16

[Steelman], hey, my grandparents have a safe full of money in the basement." This was a fair response to defense counsel's argument during closing that Steelman didn't know there was a safe in the Hayeses' basement and that others did—a point that defense counsel discussed at length. Hence, the defense opened the door to the state's rebuttal argument. There was no misconduct. See *State v. Diar*, 120 Ohio St.3d 460, 2008-Ohio-6266, 900 N.E.2d 565, ¶ 217 (prosecutor has wide latitude to respond to arguments made by defense counsel during closing).

*Steelman*, 2018-Ohio-1732.

Prosecutorial misconduct justifies federal habeas relief only if it "so infected the trial with unfairness as to make the resulting conviction a denial of due process" and resulted in prejudice. *Gillard v. Mitchell*, 445 F.3d 883, 897 (6th Cir. 2006) (quoting *Darden v. Wainwright*, 477 U.S. 168, 181 (1986)).

On habeas review, claims of prosecutorial misconduct are reviewed deferentially. *Darden v. Wainwright*, 477 U.S. 168, 181 (1986). To be cognizable, the misconduct must have "'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *Id.* (citation omitted). Even if the prosecutor's conduct was improper or even "universally condemned," *id.*, we can provide relief only if the statements were so flagrant as to render the entire trial fundamentally unfair. Once we find that a statement is improper, four factors are considered in determining whether the impropriety is flagrant: (1) the likelihood that the remarks would mislead the jury or prejudice the accused, (2) whether the remarks were isolated or extensive, (3) whether the remarks were deliberately or accidentally presented to the jury, and (4) whether other evidence against the defendant was substantial. *See Boyle v. Million*, 201 F.3d 711, 717 (6th Cir. 2000). Under [the] AEDPA, this bar is heightened by the deference we give to the . . . [Ohio] Supreme Court's determination of . . . [Petitioner's] prosecutorial-misconduct claims. *See Macias v. Makowski*, 291 F.3d 447, 453-54 (6th Cir. 2002)("If this court were hearing the case on direct appeal, we might have concluded that the prosecutor's comments violated Macias's due process rights. But this case is before us on a petition for a writ of habeas corpus. So the relevant question is not whether the state court's decision was wrong, but whether it was an unreasonable application of clearly established federal law.").

*Bowling v. Parker*, 344 F.3d 487, 512-13 (6th Cir. 2003).

In evaluating the Third Assignment of Error, the First District cited the standard from *Lott, supra,* which mirrors the federal standard set out in *Darden*. The question before this Court, then, is whether the First District's decision represents an unreasonable application of that standard.

For a substantial number of the prosecutor's comments, the First District found there had been no objection at trial and reviewed the comments only under a plain error standard. Respondent contends the failure to object created a procedural default and the Magistrate Judge agrees.

The Sixth Circuit Court of Appeals requires a four-part analysis when the State alleges a habeas claim is precluded by procedural default. *Barton v. Warden, S. Ohio Corr. Facility,* 786 F.3d 450, 464 (6th Cir. 2015), *Guilmette v. Howes,* 624 F.3d 286, 290 (6th Cir. 2010)(*en banc*); *Eley v. Bagley*, 604 F.3d 958, 965 (6th Cir. 2010); *Reynolds v. Berry*, 146 F.3d 345, 347-48 (6th Cir. 1998), *citing Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986); *accord Lott v. Coyle*, 261 F.3d 594, 601-02 (6th Cir. 2001); *Jacobs v. Mohr*, 265 F.3d 407, 417 (6th Cir. 2001).

> First the court must determine that there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with the rule.
> . . . .
> Second, the court must decide whether the state courts actually enforced the state procedural sanction, citing *County Court of Ulster County v. Allen*, 442 U.S. 140, 149, 99 S.Ct. 2213, 60 L.Ed.2d 777 (1979).
>
> Third, the court must decide whether the state procedural forfeiture is an "adequate and independent" state ground on which the state can rely to foreclose review of a federal constitutional claim.
>
> Once the court determines that a state procedural rule was not complied with and that the rule was an adequate and independent state ground, then the petitioner must demonstrate under *Sykes* that

> there was "cause" for him to not follow the procedural rule and that
> he was actually prejudiced by the alleged constitutional error.

*Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986); accord, *Hartman v. Bagley,* 492 F.3d 347, 357

(6th Cir. 2007), *quoting Monzo v. Edwards*, 281 F.3d 568, 576 (6th Cir. 2002).  A habeas petitioner

can overcome a procedural default by showing cause for the default and prejudice from the asserted

error. *Atkins v. Holloway*, 792 F.3d 654, 657 (6th Cir. 2015).

Ohio has a contemporaneous objection rule — that parties must preserve errors for appeal

by calling them to the attention of the trial court at a time when the error could have been avoided

or corrected, set forth in *State v. Glaros*, 170 Ohio St. 471 (1960), paragraph one of the syllabus;

*see also State v. Mason*, 82 Ohio St. 3d 144, 162 (1998)  The Sixth Circuit has repeatedly held this

is an adequate and independent state ground of decision. *Wogenstahl v. Mitchell*, 668 F.3d 307,

334 (6th Cir.  2012), *citing Keith v. Mitchell*, 455 F.3d 662, 673 (6th Cir. 2006); *Goodwin v.*

*Johnson*, 632 F.3d 301, 315 (6th Cir. 2011); *Smith v. Bradshaw*, 591 F.3d 517, 522 (6th Cir. 2010);

*Nields v.  Bradshaw*, 482 F.3d 442 (6th Cir.  2007); *Biros v. Bagley,* 422 F.3d 379, 387 (6th Cir.

2005);  *Mason v. Mitchell*, 320 F.3d 604 (6th Cir. 2003), *citing  Hinkle v. Randle*, 271 F.3d 239,

244 (6th Cir. 2001); *Scott v. Mitchell*, 209 F.3d 854 (6th Cir. 2000), *citing Engle v. Isaac,* 456 U.S.

107, 124-29 (1982).  *See also Seymour v. Walker*, 224 F.3d 542, 557 (6th Cir. 2000); *Goodwin v.*

*Johnson*, 632 F.3d 301, 315 (6th Cir. 2011); *Smith v. Bradshaw*, 591 F.3d 517, 522 (6th Cir.), *cert.*

*denied*, 562 U.S. 876 (2010).

The First District enforced the contemporaneous objection rule against Steelman by

reviewing these claims only for plain error.  An Ohio state appellate court's review for plain error is

enforcement, not waiver, of a procedural default. *Wogenstahl v. Mitchell*, 668 F.3d 307, 337 (6th

Cir. 2012); *Jells v. Mitchell,* 538 F.3d 478, 511 (6th Cir. 2008); *Lundgren v. Mitchell,* 440 F.3d 754,

765 (6th Cir. 2006); *White v. Mitchell,* 431 F.3d 517, 525 (6th Cir. 2005); *Biros v. Bagley*, 422 F.3d 379,

387 (6th Cir. 2005); *Hinkle v. Randle*, 271 F.3d 239 (6th Cir. 2001).

Finally, Steelman attempts to overcome the procedural default by claiming actual innocence. But as we have seen with respect to the First Ground for Relief, he has not satisfied the *Schlup* standard of proof on that claim.

With respect to some of the claims of prosecutorial misconduct, the First District held there was not misconduct at all, but fair comment on defense arguments or merely use of "colorful" language. In trials in federal court, the undersigned would require more civility; use of "two-bit" as an adjective with "junkie" was less respectful of the dignity of Petitioner than this Court would find acceptable. Although Steelman was a heroin user and would have died if he had not been caught, and thus "junkie" was accurate, there was no need to add the invective. But the First District offered examples of other "colorful" prosecutorial language which had been approved by Ohio appellate courts even in capital cases (*Tibbetts* and *Nields*). Steelman cites no instances where "colorful" language by itself has been held by the Supreme Court to violate the Constitution.

The First District correctly held that the prosecuting attorney's claim that he knew "for a fact" that the Pepsi can was in the Hayeses' basement was improper. *Steelman* at ¶ 34. Nevertheless, standing alone, it did not render the trial unfair and there was a solid basis in the evidence for finding that as a fact.

Finally, the First District found that the prosecutor has misstated the law on the presumption of innocence, but there was an immediate objection, an apology from the prosecutor, and a correct curative instruction to the jury.

Reviewed deferentially as we must in habeas, the First District's decision on the Third Assignment of Error was not an unreasonable application of the relevant Supreme Court precedent and therefore Steelman's Third Ground for Relief is without merit.

Portions of this Third Ground were procedurally defaulted by failure to make contemporaneous objection. Respondent asserts the entire Ground is defaulted for lack of fair

presentation to the Supreme Court of Ohio. Petitioner offers no reply except for his actual innocence claim, which, as noted above, does not meet the *Schlup* standard.

**Conclusion**

Based on the foregoing analysis, the Magistrate Judge respectfully recommends the Petition be dismissed with prejudice. Because reasonable jurists would not disagree with this conclusion, it is also recommended that Petitioner be denied a certificate of appealability and that the Court certify to the Sixth Circuit that any appeal would be objectively frivolous and should not be permitted to proceed *in forma pauperis*.

October 13, 2020.

s/ *Michael R. Merz*
United States Magistrate Judge

**NOTICE REGARDING OBJECTIONS**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Because this document is being served by mail, three days are added under Fed.R.Civ.P. 6. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. A party may respond to another party's objections within fourteen days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal.